IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISAAC B.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | )   No. 20 C 5727 |
| v. | ) |
| | )   Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
|     Defendant. | ) |

**<u>ORDER</u>**[3]

Before the Court is Plaintiff Isaac B.'s motion for summary judgment seeking remand of the Administrative Law Judge's ("ALJ") opinion denying his application for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") (D.E. 17) and the Commissioner's cross motion for summary judgment to affirm that decision. (D.E. 23.)[4] For the following reasons, the ALJ's decision is affirmed.

**I.    PROCEDURAL HISTORY**

Plaintiff filed his claim for benefits on May 24, 2013, alleging he has been disabled due to a fractured spine since December 20, 2012. (R. 591.) After a hearing, on December 9, 2015,

---

[1] The Court in this opinion is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Kilolo Kijakazi for former Commissioner Andrew Saul as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On October 9, 2020, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 9.)

[4] The Appeals Council ("AC") subsequently denied review of the opinion (R. 581-84), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

ALJ Luke Woltering found Plaintiff not disabled. (R. 20-28.) Plaintiff filed a lawsuit in federal court, and the Court remanded the case for further proceedings, on September 19, 2017, stating in relevant part that the case is remanded to "reevaluate the weight to be given to the medical opinion evidence and to reassess Plaintiff's subjective symptom statements … after determining the weight to be given the treating physician's opinion, the ALJ shall then reevaluate Plaintiff's physical and mental impairments and RFC … [and] determine whether there are jobs that exist in significant numbers that Plaintiff can perform." (R. 668-698.)

After a second hearing before the same ALJ, on August 23, 2019, the ALJ again found Plaintiff not disabled, and Plaintiff's appeal of that decision is now before the Court. (R. 591-600.)

II. ADMINISTRATIVE RECORD

A. Medical Evidence[5]

Slightly more than two months after Plaintiff's April 11, 2019, hearing before the ALJ, Plaintiff attended an updated Internal Medicine Consultative Examination with M.S. Patil, M.D. on June 17, 2019, on referral from the Bureau of Disability Determination Services. (R. 873-84.) Dr. Patil wrote that Plaintiff was involved in an altercation in 2013 and was hit on his upper back/neck area ultimately resulting in cervical spine surgery in 2013. (R. 873.) Dr. Patil noted that Plaintiff reported having intermittent mild pain and stiffness in his neck and rated the neck pain at a four on a scale of zero to 10. (R. 873.) Plaintiff also conveyed to Dr. Patil that he had a tingling sensation in his left upper extremity, and his doctor prescribed Gabapentin, which helped considerably. (R. 873.) Some days Plaintiff's low back hurt at a rating of three out of 10. (R. 873.)

---

[5] Although the medical evidence in the Record dates to 2012, the Court focuses on the post-hearing consultative examination ordered by the ALJ in this section of the Order.

Upon examination, Dr. Patil found that Plaintiff's mental status was normal (R. 874), his motor strength measured 5/5 in all upper and lower extremities (R. 875), his gait was normal (but he had some difficulty with squats and arises), and he had no difficulty with the fine and gross manipulative movements of his right and left hands and fingers with a grip strength of 5/5 in each hand (R. 875-76). Dr. Patil noted that Plaintiff's gait, speech, hand dexterity, memory and mentation were normal. (R. 876.)

Dr. Patil also completed a medical source statement and determined that Plaintiff could both lift and carry 21 to 50 pounds frequently; sit for four hours, stand for two hours, and walk for two hours at *one time* without interruption; sit for four hours, stand for two hours, walk for two hours *total* in an eight hour work day; frequently reach (overhead and all other), handle, finger, feel, push/pull with both the right and left hand; and occasionally climb ladders or scaffolds but frequently climb stairs and ramps, balance, stoop, kneel, crouch and crawl. (R. 878-881.)

### B. ALJ Opinion

The ALJ applied the five-step inquiry required by the Social Security Act in reaching the decision to deny Plaintiff's request for benefits. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 20, 2012. (R. 593.) At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: cervical spine stenosis with cervical radiculopathy and chronic pain syndrome. (R. 594.) The ALJ determined that Plaintiff's physical impairment of hypertension is non-severe because it was treated conservatively and managed medically. (R. 594.) Similarly, the ALJ found Plaintiff's mental impairment of depression non-severe because it caused no more than mild limitation in any of the functional areas. (R. 594-95.) In support of this finding, the ALJ gave great weight to non-examining state agency medical consultant Russell Taylor, Ph.D who opined

Plaintiff's mental impairment is non-severe and results in only mild limitations (R. 97-103); gave great weight to examining consultative examiner Piyush Buch, M.D. whose findings were consistent with the minimal examination findings in the longitudinal treatment records (R. 360-61); and assessed the so-called "paragraph B criteria" and found that Plaintiff's impairments caused a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 594-95.)

At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (R. 595.) Before turning to Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing/walking six out of eight hours, and sitting six out of eight hours with the following additional limitations:

> cannot climb ladders, ropes, or scaffolds, or crawl; can occasionally climb ramps and stairs, stoop, kneel, and crouch; cannot perform overhead reaching; can frequently reach, handle, finger, and feel with the bilateral upper extremities.

(R. 595.) At Step Four, the ALJ noted that Plaintiff was able to perform his past relevant work as a phlebotomist. (R. 599.) As such, the ALJ found that Plaintiff had not been under a disability since December 20, 2012. (R. 600.)

## III. LEGAL STANDARD

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve

4

debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination. Rather, this court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). The claimant has the burden of proof at steps one through four of the five-step sequential process for determining disability. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden of proof shifts to the Commissioner of Social Security to show that the claimant can adjust to other work existing in "a significant number of jobs…in the national economy." *See Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

IV.    **ANALYSIS**

Plaintiff raises four arguments in support of remand: (1) the ALJ's physical functional capacity finding is not supported by substantial evidence; (2) the ALJ reversibly erred in assessing the treating opinion evidence; (3) the ALJ reversibly erred in assessing Plaintiff's symptoms; and (4) the ALJ reversibly erred in omitting the mental limitations he found from the functional capacity finding and hypothetical question. Plaintiff's Memorandum in Support of Remand ("Pl. Mem."; D.E. 18) at 5, 9, 12, 14. Because we find that the ALJ's determination was supported by substantial evidence, we affirm the decision. The Court will address each argument in turn.

### A. The ALJ's Assessment of Plaintiff's Treating Doctors Was Supported By Substantial Evidence.

Plaintiff contends that the ALJ failed to set forth the requisite good reasons for discounting the opinion of Plaintiff's treating medical source, Dr. Michael Appiagyei, and also, that the ALJ failed to weigh the opinion as required under the regulations. *Id.* at 10.

As Plaintiff filed his application for benefits before March 27, 2017, the "treating physician rule" applies, whereby ALJs must give "controlling weight" to a treating physician's opinion if it

5

is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019), quoting 20 C.F.R. § 404.1527(c)(2). The ALJ must provide "good reasons" for not giving a treating physician's opinion controlling weight, including considering the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the medical opinion with the record, and the physician's specialization. 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(5). Yet an ALJ is not required to discuss every factor listed in the regulation; rather, an ALJ need only "minimally articulate" the reasons for the weight assigned to a medical opinion. *See Collins v. Berryhill*, 743 F. App'x 21, 25, (7th Cir. 2018), *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Plaintiff argues that the ALJ discounted Dr. Appiagyei's opinion because Plaintiff's "chronic pain is controlled" but that this does not mean Plaintiff was without pain. Pl. Mem. at 10, quoting R. 598. Dr. Appiagyei opined that Plaintiff could sit and stand for one hour at a time, and could sit for four hours total and stand or walk for two hours total in an eight-hour workday with periods of walking and shifting positions at will. (R. 598.) Plaintiff would also sometimes need to take unscheduled breaks, every hour for 15 to 20 minutes because of aches and pains. (R. 598.) Dr. Appiagyei further opined that Plaintiff could lift and/or carry 10 pounds or less occasionally and 20 pounds rarely. (R. 598.)

In assessing Dr. Appiagyei's opinion, the ALJ considered that Dr. Appiagyei was a treating medical source who treated Plaintiff monthly, but the ALJ assigned limited weight to this doctor's, which the ALJ found in conflict with the longitudinal medical records, including the doctor's own records. (R. 598.) More specifically, the ALJ discussed the disconnect between Dr. Appiagyei's opinion that Plaintiff's pain was so severe that it would constantly interfere with Plaintiff's ability

6

to concentrate and pay attention to perform even simple work tasks, with his myriad of treatment notes stating that Plaintiff's chronic pain was controlled. (R. 598, citing R. 885-1098.) The ALJ did not state that Plaintiff was pain-free, but rather that Dr. Appiagyei's records do not support the proposition that Plaintiff's symptoms, including his pain, were severe enough to interfere constantly with his attention and concentration. (R. 598; Pl. Mem. in Support of Remand at 10.)

Further, the ALJ discussed that the updated records did not support Dr. Appiagyei's opinion regarding Plaintiff's ability to sit, stand and walk and the lift/carry restrictions. (R. 598.) The ALJ reviewed the March 2018 examination report completed by Dr. Appiagyei that noted Plaintiff had normal strength and range of motion, no tenderness to palpation, no focal deficits, and normal gait. (R. 598-99, citing R. 1009.) In addition, the ALJ discussed that the consultative examination after the hearing by Dr. Patil also showed that Plaintiff had five-out-of-five strength throughout, with five-out-of-five grip strength (R. 598), which was inconsistent with Dr. Appiagyei's lifting and carrying restrictions.

The ALJ reasonably considered the content of the treatment records and in doing so, determined that the totality of the evidence did not support the severity of limitation opined by Dr. Appiagyei. Thus, the ALJ's decision to discount Dr. Appiagyei's opinion was supported by substantial evidence, as the Seventh Circuit repeatedly has upheld ALJ decisions discounting treating physician opinions based on such inconsistencies with other medical evidence in the record. *See Pavlicek v. Saul*, 994 F.3d 777, 781-82 (7th Cir. 2021) (affirming ALJ's decision not to give controlling weight to treating physician's opinion that contradicted physician's own examination notes); *Karr v. Saul*, 989 F.3d 508, 511-12 (7th Cir. 2021) (affirming ALJ's decision to discount treating specialist's opinion because it conflicted with notes from the claimant's primary care provider and an emergency room visit); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020)

7

(holding that the ALJ reasonably rejected the treating physician's opinion because it conflicted with the other medical evidence, including the state agency doctor's report); *Hall v. Berryhill*, 906 F.3d 640, 643 (7th Cir. 2018) (affirming ALJ's decision to discount treating physician's opinion because it "was at odds with the other doctors' opinions"). Further, the Court declines the invitation by Plaintiff to reweigh the evidence. *Reynolds v. Kijakazi*, 25 F.4th at 473 (the Court "will not reweigh the evidence").

### B. The ALJ Supported Plaintiff's Physical RFC with Substantial Evidence.

Plaintiff argues that by not adopting any medical opinion in the record, the ALJ created an "evidentiary deficit" that did not support the RFC determination that Plaintiff was able to stand and walk for six hours out of an eight-hour workday. Pl. Mem. at 5. After carefully considering the ALJ's opinion and the parties' arguments, the Court finds that whether substantial evidence supported the standing and walking requirements of the RFC determination was a close call, but in the end, we find that substantial evidence did support the ALJ's assignment, to Plaintiff, of an RFC encompassing work at the light level of exertion which included standing and walking six hours in an eight-hour work day.

The ALJ must "cite[] to relevant evidence adequate to support [the] conclusion" as to the limitations in Plaintiff's RFC. *Schloesser v. Berryhill*, 870 F.3d 712, 720 (7th Cir. 2017). Additionally, an ALJ's RFC assessment will not be overturned where "[t]he ALJ thoroughly discussed the medical and other evidence and carefully considered each of [Plaintiff's] impairments and related functional deficits" in assigning an RFC. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

In this case, the ALJ adequately tied the limitations in the RFC to the evidence of record, including evidence that Plaintiff recovered well following surgical intervention; moved all

extremities with good strength; had a normal gait; had normal musculoskeletal symmetry, tone, strength and range of motion with no instability or tenderness to palpation; and had controlled or stable pain. (R. 597-98.) The ALJ also discussed that although Dr. Patil opined that Plaintiff could only stand and walk two hours each in an eight-hour workday, his examination findings did not support this limitation as Dr. Patil determined that Plaintiff had 5/5 strength and normal gait. (R. 598.) In addition, the ALJ also noted Dr. Appiagyei's March 2018 examination report, which similarly stated that Plaintiff had normal strength and range of motion, no tenderness to palpation, no focal deficits, and normal gait. (R. 598.) The ALJ's reliance on this aspect of Dr. Appiagyei's report as cutting against a disability finding was well within the substantial evidence standard on our review. *See Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023) (ALJ properly declined credit to treating physician's opinion that plaintiff could not walk or stand for more than two hours per day where plaintiff showed normal muscle strength, reflexes, sensation, grip strength, and denied issues with ambulation). Here, the ALJ weighed the evidence and made appropriate inferences from the record. *See Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010). Because the ALJ adequately, albeit thinly, explained why he declined to adopt Dr. Patil's standing and walking limitations, the Court finds substantial evidence supports the ALJ's decision and declines Plaintiff's invitation to reweigh the evidence. *Reynolds*, 25 F.4th at 473. Again, the ALJ's reasoning need only be articulated minimally. *See Elder*, 529 F.3d at 415.

Plaintiff also argues that the case should be remanded because the ALJ should have awarded him a closed period of benefits, claiming the ALJ "failed to 'remain watchful' for the possibility that [Plaintiff] was disabled for the earlier period of time" relating to his upper extremity clinical findings prior to Dr. Patil's consultative exam in 2019 and the 2018 treating notes. Pl. Mem. at 9, quoting *Walker v. Berryhill*, 900 F.3d 479, 484 (7th Cir. 2018). Plaintiff alleges that

9

the Commissioner declined to address the argument for a closed period for benefits and as such, warrants remand. Plaintiff's Reply to the Commissioner's Memorandum ("Pl. Reply"; D.E. 25) at 6. But Plaintiff's assumption is a stretch. While the Commissioner does not address this argument head on in terms of using the phrase "closed period of benefits" and the like, the Commissioner does discuss that the ALJ addressed and acknowledged the occasions where a deficit was noted in Plaintiff's left arm but also the occasions of observations of normal muscle strength, symmetry, and tone in both of Plaintiff's arms. Memorandum by Defendant in Support of Summary Judgment ("Def. Mem"; D.E. 24) at 12-13, citing R. 597, (4/30/2014) 390, (5/30/2014) 393, (8/11/2014) 399, (9/30/2015) 426, (9/17/2014) 442, (9/01/2015) 917, (12/01/2015) 922, (12/01/2016) 963, (9/01/2017) 990, and (8/01/2018) 1023. The Court is satisfied that the ALJ remained watchful of Plaintiff's claims concerning his arms and did not waive this argument, especially in light of Plaintiff's failure to designate a 12-month period with that continuum. *See Combs v. Kijakazi*, 69 F.4th 428, 437 (7th Cir. 2023) (finding no fault with the ALJ for failing to consider a closed period that plaintiff herself had difficulty identifying).

### C. The ALJ's Assessment of Plaintiff's Symptoms Was Supported By Substantial Evidence.

Social Security Regulation 16-3p guides an ALJ as to how to evaluate the intensity and persistence of a claimant's subjective symptoms so that the ALJ can determine how those symptoms might limit the claimant's ability to perform work-related activities. The regulations also state that when complaints of pain are reported in excess of what would be expected by the medical evidence, the ALJ should examine the claimant's work record, observations of treating doctors and others regarding the nature of the claimant's symptoms, precipitating and aggravating factors, the use of medication and other treatment to relieve symptoms, functional restrictions, and daily activities. 20 CFR § 404.1529, SSR 16-3p. An ALJ need not discuss every detail in the record

10

as it relates to every factor. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). Summaries of medical evidence, while definitionally "partial and selective," are appropriate. *Id.* at 901. Still, although ALJs do not need to address every piece of evidence in the record, ALJs may not ignore an entire line of evidence contrary to their ruling. *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278-79 (7th Cir. 2022).

In finding that Plaintiff's statements about the intensity and severity of his symptoms were not entirely consistent with the medical evidence, the ALJ first acknowledged Plaintiff's back surgery in 2012 or 2013, but that he continued to experience pain. (R. 596.) The ALJ further acknowledged Plaintiff's testimony about his symptoms, specifically that his pain medication eases the pain, but that he experiences numbness in his left arm, back, and leg, that he can stand 30 minutes, sit for one hour, and lift maybe 10-15 pounds. (R. 596.)

The ALJ first discussed the Plaintiff's activities of daily living and noted that various activities contradicted certain symptoms and limitations. (R. 596.) For example, the ALJ acknowledged Plaintiff's assertion of manipulative limitations but that it contradicted with Plaintiff's ability to drive, and as such, perform fine manipulation to turn the key, use volume controls, use heat controls, and open doors, and also gross manipulation, including putting on a seat belt. (*Id.*) Similarly, the ALJ noted Plaintiff's testimony that he is unable to feel anything with his left hand, yet he also testified he is able to do dishes. (*Id.*)

After next discussing Plaintiff's medical history, the ALJ explained why the evidence did not support Plaintiff's testimony about the severity of his pain and other symptoms. Specifically,

11

the ALJ noted the following medical evidence that was inconsistent with Plaintiff's claims that his pain was disabling:

- Although on February 21, 2013, Plaintiff underwent a C6-7 anterior cervical discectomy and fusion, he recovered well. (R. 597.) The May 8, 2013, examination report showed unremarkable sensory examination, that Plaintiff moved all extremities with good strength, had five-out-of-five strength bilaterally and unremarkable neck range of motion, and normal gait. (*Id.*)

- While acknowledging Plaintiff's intermittent neck, upper back and left upper extremity pain in August 2013, the ALJ pointed once again to the Plaintiff's unremarkable sensory examination, movement of all extremities with good strength, no lower back tenderness, normal gait, and unremarkable neck range of motion. (*Id.*) And his grip was notably strong in November 2013. (*Id.*)

- In further acknowledging Plaintiff's complaints of chronic neck pain, the ALJ pointed to numerous medical reports through the relevant time period where Plaintiff had normal musculoskeletal symmetry, tone, and strength with no instability and his back and neck pain was controlled. (*Id.*)

- The ALJ also acknowledged Plaintiff's use of narcotic medication to control his pain symptoms but noted that medication alleviated the symptoms. (*Id.*) For example, the ALJ discussed Plaintiff's limited range of motion in his back in August 2014 and January 2015, but also that his spine was normal without deformity or tenderness, and he had normal musculoskeletal symmetry, tone and strength. (*Id.*)

- Plaintiff had limited range of motion in April 2015, but only mild paraspinal tenderness with normal musculoskeletal symmetry, tone and strength; by September 2015, Plaintiff had normal range of motion with no instability or tenderness to palpation and normal gait. (*Id.*)

- Updated records in 2016, 2017 and 2018 showed controlled or stable pain with narcotic medication, normal gait, normal musculoskeletal range of motion, no tenderness to palpation, and normal back range of motion without tenderness. (R. 597-98.)

- In May 2019, Plaintiff reported only intermittent mild pain and stiffness in the neck and upon examination had a normal gait, five-out-of-five strength throughout, no difficulty performing fine or gross movements on the left or right hand, and five-out-of-five grip strength bilaterally. (R. 598.)

- The ALJ also acknowledged the prior administrative finding, dated September 2013 by state agency doctor Towfig Arjmand, M.D., that Plaintiff could perform medium exertion work. But the ALJ only gave this opinion limited weight, explaining that although the consultative examination conducted after the hearing in May 2019 only showed mild complaints of pain, the ALJ found Plaintiff capable of light work, accounting for Plaintiff's continued use of narcotic medication for pain and subjective complaints. (R. 599.)

Plaintiff argues that the ALJ did not grapple with Dr. Arjmand's opinion that the intensity, persistence and functionally limiting effects of Plaintiff's symptoms were substantiated by the objective medical evidence. Pl. Mem. at 12. However, Plaintiff fails to acknowledge that Dr.

Arjmand opined Plaintiff was capable of performing medium work while the ALJ determined Plaintiff could perform only light work with certain restrictions. (R. 80, 595, 599.)

Plaintiff also states that the ALJ continued to rely on Plaintiff's basic daily activities such as driving and washing dishes to invalidate his claims, arguing that none of those activities establishes use of his hands more than five hours in the workday. Pl. Mem. at 12. Although Plaintiff testified that he could not feel anything with his left hand, and that this interfered with his ability to hold items, Plaintiff stated he was able to do dishes. (R. 596, 626-27.) Similarly, the ALJ explained that Plaintiff's ability to drive regularly and to execute the movements typically involved in driving, such as turning the key, adjusting volume and heat controls, opening the door and putting on a seat belt undermine Plaintiff's contention of manipulative limitations. (R. 596.) Moreover, as discussed above, the ALJ also considered the objective medical evidence that undermined Plaintiff's assertions about the severity of his symptoms and limitations.

The ALJ did not deny Plaintiff's pain and symptoms in their entirety, but only the degree to which they affect his ability to work at the RFC the ALJ determined. In so doing, the ALJ weighed the medical evidence and noted where it was inconsistent with Plaintiff's testimony. The ALJ's subjective symptom analysis was not patently wrong, and thus we will not disturb it under our deferential standard of review. *Murphy v. Colvin,* 759 F.3d 811, 816 (7th Cir. 2014); *see also Bates v. Colvin,* 736 F.3d 1093, 1098 (7th Cir. 2013) (stating that court's review of ALJ's symptom evaluation is "extremely deferential").

### D. The ALJ's Decision To Exclude Mental Limitations from Plaintiff's RFC Was Supported By Substantial Evidence.

The ALJ determined that the record indicated that Plaintiff's depression is non-severe. (R. 594.) Plaintiff argues that the ALJ erred by omitting Plaintiff's non-severe mental restrictions from the RFC when the ALJ failed to include Plaintiff's mild limitations in the RFC and

14

hypothetical question or explain the omission. Pl. Mem. at 14. Yet the ALJ did examine the evidence of Plaintiff's mental impairments at length in the Paragraph B analysis (R. 594-95.) "A reviewing court is charged with reading an ALJ's opinion as a whole and taking a common-sense approach to its review." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019), cited in *Brandi B. v. Kijakazi*, No. 21 C 4383, 2022 WL 2463558, at *6 (N.D. Ill. July 6, 2022).

The ALJ assessed a mild limitation in the four domains of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 594-95.) The Seventh Circuit recognizes that "a mild, or even a moderate, limitation in an area of mental functioning does not prevent an individual from functioning satisfactorily." *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) (signals and citations omitted). Additionally, "while an ALJ must consider limitations and restrictions imposed by an individual's impairments, even those that are non-severe, the RFC need only incorporate limitations supported by the claimant's medical record." *Monique B. v. Saul*, No. 19 C 652, 2020 WL 4208112, at *13 (N.D. Ill. July 22, 2020), citing 20 C.F.R. § 404.1545(a)(2); *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

Here, the ALJ gave great weight to state agency consultant, Russell Taylor, Ph.D, who opined that Plaintiff's mental impairment was non-severe and resulted in only mild limitations. (R. 594.) The ALJ found this opinion was consistent with the Plaintiff's activities of daily living, including using public transportation, driving, caring for his children, managing finances, and shopping in stores. (R. 594.) In addition, the ALJ determined that Dr. Taylor's opinion was also consistent with the normal findings of the May 2014 consultative examination, which revealed good attention and concentration, average memory, good intelligence and general knowledge, and good abstract thinking and social judgment. (R. 594.)

15

Similarly, the ALJ also gave great weight to the consultative examiner, Piyush Buch, M.D., who noted that Plaintiff related well with appropriate behavior, was able to understand, remember and carry out instructions, and handled the stress of the interview. (R. 594.) The ALJ further determined that Dr. Buch's findings were consistent with the minimal examination findings in the longitudinal treatment records, including consistent intact memory, judgment and insight, normal mood and affect, and normal speech rate and tone. (R. 594.) The ALJ conceded that updated evidence from a March 2019 statement noted Plaintiff met the requirements for depression, but pointed out that there was no updated evaluation accompanying the statement. (R. 594.) Furthermore, the updated records contained longitudinal examination reports that consistently noted intact memory, judgment and insight with normal mood and affect, and full orientation. (R. 594.)

In the RFC analysis, the ALJ also gave limited weight to Dr. Appiagyei's opinion that Plaintiff's aches and pains would be severe enough to interfere constantly with his attention and concentration even to perform simple work tasks because it is not supported by the longitudinal medical records. (R. 598.) Rather, the ALJ observed that the records consistently noted that Plaintiff's chronic pain was controlled, and as such, his symptoms, including pain, would not be severe enough to interfere constantly with Plaintiff's attention and concentration. (R. 598.)

The Court finds no error in the ALJ's consideration of this evidence, under our deferential review of ALJ determinations for a grounding in substantial evidence. Moreover, Plaintiff did not establish that his mild mental limitations caused restrictions. *See, e.g.*, *James G., Jr. v. Saul*, No. 18 C 4794, 2019 WL 4305518, at *6 (N.D. Ill. Sept. 11, 2019); *Kathleen C. v. Saul*, No. 19 C 1564, 2020 WL 2219047, at *4 (N.D. Ill. May 7, 2020) (collecting cases); *Monique B. v. Saul*, No.

19 C 652, 2020 WL 4208112, at *13 (N.D. Ill. July 22, 2020). Thus the ALJ properly considered Plaintiff's non-severe mental impairments.

## CONCLUSION

For these reasons, the Court grants Defendant's motion for summary judgment (D.E. 23) and denies Plaintiff's motion for summary judgment. (D.E. 17.)

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: August 24, 2023**